# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-03001-MSK-KLM

EDWARD LEE HICKS,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
DENVER HEALTH AND HOSPITAL AUTHORITY,
JEROME GONZALES,
JASON SISNEROS,
VICTOR LOMBARDI,
KENNETH KENT,
ALBERTA COMPTON,
ALEXANDRA WHERRY,
ROBERT ORTIZ,
DARYL MEHNERT,
RICHARD ANDERSON,
CARRIE RODRIGUEZ,
SHEILA GARCIA,
GABRIEL GRIEGO,
FRANK ROLANDO,
WENDY GALLEGOS,
CHRISTIAN STOB, and
TIMOTHY APPLEGATE,

     Defendants.

_____

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS AND GRANTING MOTION FOR APPOINTMENT OF COUNSEL
_____

**THIS MATTER** comes before the Court pursuant to: (1) Defendant Wendy Gallegos'

("Nurse Gallegos") Motion to Dismiss the Amended Prisoner Complaint **(#42)**, Mr. Hicks'

Response **(#75)**, Nurse Gallegos' Reply **(#83)**, and Mr. Hicks' Surreply **(#96)**; (2) Defendant

Christian Stob's ("Dr. Stob") Motion to Dismiss Amended Prisoner Complaint **(#41)**, Mr. Hicks'

Response (**#76**), and Dr. Stob's Reply (**#81**); (3) Defendant Timothy Applegate's ("Mr. Applegate") Motion to Dismiss Amended Prisoner Complaint (**#47**), Mr. Hicks' Response (**#76**), and Mr. Applegate's Reply (**#80**); (4) Defendants Jerome Gonzales ("Deputy Gonzales"), Jason Sisneros ("Deputy Sisneros"),Victor Lombardi ("Deputy Lombardi"), Kenneth Kent ("Deputy Kent"), Alberta Compton ("Deputy Compton"), Alexandra Wherry ("Deputy Wherry"), Robert Ortiz ("Deputy Ortiz"), Darryl Mehnert ("Deputy Mehnert"), Richard Anderson ("Deputy Anderson"), Carrie Rodriguez ("Deputy Rodriguez"), Sheila Garcia ("Deputy Garcia"), and Gabriel Griego's ("Deputy Griego") (collectively, "the Denver Sheriff's Department Deputies") Partial Motion to Dismiss the Amended Prisoner Complaint (**#49**), Mr. Hicks' Response (**#74**), the Denver Sheriff's Department Deputies' Reply (**#82**), and Mr. Hicks' Surreply (**#97**); (5) Defendant Frank Rolando's ("Deputy Rolando") Partial Motion to Dismiss the Amended Prisoner Complaint (**#88**), Mr. Hicks' Response (**#99**), and Deputy Rolando's Reply (**#100**); (6) Mr. Hicks' Motion to Appoint Counsel (**#93**), to which no response was filed; and (7) Mr. Hicks' Motion to Enter Exhibits (**#79 and #94**), the Denver Sheriff's Department Deputies' Response (**#84**), and Mr. Hicks' Reply (**#95**).

## I.  JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II.  FACTUAL ALLEGATIONS

The Court provides a brief summary of the pertinent well pled allegations in the Third Amended Complaint's (**#65**) and elaborates as necessary in its analysis.[1]

---

[1]      All of the pending motions to dismiss (except Deputy Rolando's motion to dismiss, which pertains to Mr. Hicks' Third Amended Complaint) pertain to Mr. Hicks' Second Amended Prisoner Complaint (**#30**), filed on July 27, 2019.  However, on November 28, 2018, Mr. Hicks filed a Third Amended Complaint.  (**#65**).  Upon the Court's careful review of both complaints,

At all relevant times, Mr. Hicks was a pretrial detainee housed at the Denver County Jail ("the Jail"). **(#65 at 10, 12)**. He contends that he suffers from a severe hearing loss disability, which makes it difficult for him to understand what others are saying and causes him to "exaggerate [his] gestures in order to be understood." **(#65 at 10, 23)**. Mr. Hicks claims that upon being admitted to the Jail in June 2016, he informed staff members of his hearing disability.[2] Mr. Hicks also alleges that despite making several requests to Dr. Stob, a physician employed by the Denver Health and Hospital Authority who worked at the Jail, Dr. Stob made no attempts to inform the Jail as to Mr. Hicks' hearing loss nor made any accommodations for his disability.[3] **(#65 at 23-253)**. Mr. Hicks alleges that the Jail's failure to recognize and accommodate his disability was discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. **(#65 at 23-27)**.

Mr. Hicks also contends that he suffers from post-traumatic stress disorder ("PTSD"),

---

there are no substantive changes to the allegations or the claims asserted. The Third Amended Complaint merely adds Deputy Rolando to the caption and clarifies that he is being sued in both his individual capacity and his official capacity. **(#65 at 2, 9)**. Thus, while Mr. Hicks did not file a motion for leave to amend his complaint in contravention of the Court's local rules, the Court notes that no party objected to this filing and will accept the filing as the modifications are nonsubstantive in nature and do not impact any allegation or claim previously asserted against any defendant. However, Mr. Hicks is on notice that he shall comply with the Court's governing rules going forward and any document in violation of those rules will be stricken from the record. Thus, for purposes of this Opinion and Order, the operative complaint is the Third Amended Complaint **(#65)**.

[2]     Mr. Hicks alleges that in 2012, he was booked into the Jail and noted his disability upon intake. Further, he claims that his records containing his hearing loss "were still on file with the Jail on June 19, 2016 when [he] was booked in again. **(#65 at 23)**.

[3]     Specifically, Mr. Hicks claims that Jail staff should have placed an "ALERT" in the computer system thereby informing all staff that special care should be taken to ensure that persons like Mr. Hicks with hearing disabilities can understand verbal communications. **(#65 at 24)**. Mr. Hicks also contends he should have been given a hearing aid. **(#65 at 25)**.

"intermittent explosive disorder," asthma, arthritis, migraine headaches, and a traumatic brain injury and takes prescription medication on a daily basis to treat and/or manage these conditions. **(#65 at 10-11, 21)**. Mr. Hicks alleges that Nurse Gallegos, a licensed nurse practitioner who dispensed medications at the Jail, knew he was prescribed the following daily medications: Cymbalta, Qvar, Prilosec, Meloxicam, and Propranonal. **(#65 at 20-21)**.

On the morning of December 14, 2016, Nurse Gallegos was dispensing medications to pretrial detainees at the Jail. Mr. Hicks alleges that when he reached the front of the "med-line," he engaged in a verbal altercation with her during which she "cursed" at him and ordered him to the back of the line. **(#65 at 21)**. When Mr. Hicks reached the front of the line again, Nurse Gallegos refused to give him his medications because he had called her names and threatened "to slap" her. **(#65 at 21-22)**. Mr. Hicks contends that because he was not given his medications that day, he "experienced migraines, pain from arthritis, had trouble eating and drinking, and felt anxious and distressed." **(#65 at 22)**.

Later that evening, Mr. Hicks was informed by Deputy Gonzales that as a result of the altercation with Nurse Gallegos, he would be transferred to punitive segregation. **(#65 at 22)**. Mr. Hicks claims that he then entered a cleaning closet and retrieved a broom handle. Deputy Gonzales asked him to put down the broom handle and a conversation ensued. Deputies Kent and Lombardi arrived, and Deputy Gonzalez pulled out nunchucks, a martial arts weapon issued to Jail deputies, and advanced on Mr. Hicks. **(#65 at 13-14)**. Mr. Hicks asserts that he brandished the broom handle and was "tackled from behind by Deputy Sisneros" and slammed onto the concrete floor. **(#65 at 14)**. Mr. Hicks alleges that Deputy Gonzales punched and struck him with the nunchucks and applied a choking maneuver. The deputies then restrained Mr. Hicks and took him to see a nurse where he was treated for "two lacerations to his right

hand." **(#65 at 15-16)**. Mr. Hicks alleges that Deputies Compton, Wherry, Ortiz, Mehnert, Anderson, Rodriguez, Garcia, Rolando, and Griego all witnessed the excessive use of force and failed to intervene. **(#65 at 18)**.

Based on these allegations, Mr. Hicks asserts seven claims for relief: (1) a claim of excessive force pursuant to 42 U.S.C. § 1983, invoking the Fourteenth Amendment, against Deputy Gonzales in both his official and individual capacities; (2) a claim against all the Denver Sheriff's Department Deputies in both their official and individual capacities for "failing to intervene" and stop Deputy Gonzales' use of excessive force pursuant to 42 U.S.C. § 1983, invoking the Fourteenth Amendment; (3) a claim against Deputy Rolando in both his official and individual capacities for "failing to intervene" and stop Deputy Gonzales' use of excessive force and for supervisory liability pursuant to 42 U.S.C. § 1983, invoking the Fourteenth Amendment; (4) a claim that Nurse Gallegos was deliberately indifferent to Mr. Hicks' serious medical needs pursuant to 42 U.S.C. § 1983, invoking the Fourteenth Amendment; (5) a claim against Dr. Stob in both his individual and official capacities for a violation of the ADA; (6) a claim against Mr. Applegate in both his individual and official capacities for a violation of the ADA; and (7) a *Monell*-type claim against the City and County of Denver and the Denver Health and Hospital Authority for a violation of the Rehabilitation Act for failing to recognize and accommodate his hearing disability.

Nurse Gallegos has moved to dismiss the claims against her in her individual capacity under Federal Rule of Civil Procedure 12(b)(6), asserting that she is entitled to qualified immunity. Deputy Rolando has moved to dismiss the supervisory liability claim against him in his individual capacity under Federal Rule of Civil Procedure 12(b)(6), asserting that he is entitled to qualified immunity. The Denver Sheriff's Department Deputies (including Deputy

Rolando), Dr. Stob, and Mr. Applegate have moved to dismiss the claims against them under

Rule 12(b)(6) on grounds that the Second Amended Complaint's allegations are insufficient to

state claims against them in their official capacities.[4]

## III. ANALYSIS

### A.  Standard of Review

Mr. Hicks initiated this case without the assistance of an attorney.  Accordingly, the

Court reads his pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  Such

liberal construction is intended merely to overlook technical formatting errors and other defects

in Mr. Hicks' filings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Indeed, although

he is not represented by counsel, Mr. Hicks must still comply with procedural rules and satisfy

substantive law to be entitled to relief.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199

n.3 (10th Cir. 2008).

### 1.  Generally

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must

accept all well-pleaded allegations in the Complaint as true and view those allegations in the

light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards & Training*,

265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*,

173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners

---

[4]       In his combined Response to Dr. Stob's and Mr. Applegate's motions to dismiss, Mr.
Hicks clarifies that he is voluntarily dismissing the individual capacity claims asserted against
both Dr. Stob and Mr. Applegate.  **(#76 at 2)**.  Thus, the Court hereby dismisses Claims five and
six asserted against Dr. Stob and Mr. Applegate in their individual capacities.  Further, the
Denver Sheriff's Department Deputies (including Deputy Rolando) have only moved to dismiss
the official capacity claims asserted against them.  Thus, the claims for excessive force and
failure to intervene asserted against the deputies in their individual capacities remain pending
before the Court.

of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### 2. Qualified Immunity

Under the doctrine of qualified immunity individual government actors are protected from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense in a motion to dismiss, the Court determines (1) whether a complaint's allegations are sufficient to show that the defendant violated a constitutional or statutory right and (2) whether the constitutional or statutory right was clearly established when the alleged

violation occurred.  *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004).  The Court

may undertake these two inquiries in whichever order it deems fit.  *Pearson v. Callahan*, 555

U.S. 223, 232 (2009).  For all practical purposes, the first inquiry is indistinguishable from the

inquiry that the Court would take in assessing a garden-variety challenge under Federal Rule of

Civil Procedure 12(b)(6) to the sufficiency of the pleadings.  *See Saucier v. Katz,* 533 U.S. 194,

201 (2001).  The "clearly established" inquiry for qualified immunity examines whether the

contours of the constitutional right were so well-settled, in the particular circumstances

presented, that "every reasonable official would have understood that what he is doing violates

that right."  *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012).

### B.  Defendants' Motions

#### 1.  Fourteenth Amendment Claims

Nurse Gallegos argues that she is entitled to qualified immunity as to Mr. Hicks'

deliberate indifference claim, and Deputy Rolando argues that he is entitled to qualified

immunity as to Mr. Hicks' supervisory liability claim.  They both argue that the Third Amended

Complaint's allegations do not sufficiently allege a constitutional violation, and if they do, any

such violation is not clearly established.

##### a. Against Nurse Gallegos

Mr. Hicks contends he was a pre-trial detainee at the time the events alleged in the Third

Amended Complaint occurred.  Under long-standing precedent, the Due Process Clause of the

Fourteenth Amendment protects pretrial detainees from cruel and unusual punishment while the

Eighth Amendment protects convicted prisoners, but the analysis is identical as to each claim.

*See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (*citing Bell v. Wolfish*, 441 U.S.

520, 535 n.16 (1979)).  Thus, Mr. Hicks' claims for deliberate indifference to a serious medical

need brought pursuant to the Fourteenth Amendment's Due Process Clause are governed under the same deliberate indifference standards afforded to convicted inmates under the Eighth Amendment. *See Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994).

The Eighth Amendment protects convicted prisoners from cruel and unusual punishment. This includes the right to receive "humane conditions of confinement," which includes the basic necessities of adequate food, clothing, shelter, and medical care, and jail and prison officials must act reasonably to ensure that prisoners receive such basic needs. *Barney v. Pulsipher*, 153 F.3d 1299, 1310 (10th Cir. 1998). It is well established that prison officials violate the Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, a claim based on an inadvertent failure to provide adequate medical care or alleging that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Rather, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

A prison official is liable for deliberate indifference to a serious medical need when the inmate shows both an objective and a subjective indifference to his medical needs. Thus, to prevail on his claim that Nurse Gallegos violated the Eighth Amendment, Mr. Hicks must show that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) Nurse Gallegos was subjectively aware of a substantial risk to Mr. Hicks' health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). An inmate may demonstrate a medical provider's culpable state of mind by presenting evidence that the provider knew of the inmate's serious medical condition (or such

9

condition was obvious) but nevertheless delayed treatment, referral, or examination. Deliberate indifference does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005); *see also Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Although, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," such harm may be shown by proof that "considerable pain resulted from the delay." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).

The Court now turns to the question of whether Mr. Hicks' allegations against Nurse Gallegos sufficiently state a claim for a violation of the Eighth Amendment. In the Third Amended Complaint, Mr. Hicks alleges that he suffers from

> PTSD and intermittent explosive disorder— a serious mental health condition for which I had been prescribed Cymbalta. The PTSD initially arose from traumatic experiences I had while incarcerated in the Texas prison system; however, since the use of force complained of in this suit it has substantially worsened. I also suffered from Asthma (for which I'd been prescribed Qvar, a steroid medication) and traumatic brain injury (TBI) — which was the result of several past head injuries, and for which I'd been prescribed Imitrex, Topamax, and Propranonal. With the exception of Imitrex and Topamax, each of these medications were prescribed to be taken daily in order to control my conditions. Since the excessive use of force complained of in this suit, I am now required to take Topamax daily.

**(#65 at 10-11)**. Mr. Hicks alleges that on the morning of December 14, 2016, Nurse Gallegos "refused to provide [him] his medications," and as a result of going without his medications for one day, he "was upset and worried, because he needed the medications to adequately control [his] health conditions." **(#65 at 12)**. He further contends that Nurse Gallegos "was aware that [he] was prescribed several daily medications" to treat his various conditions including PTSD, asthma, arthritis, migraine headaches, hearing issues, and

traumatic brain injury, and Nurse Gallegos knew that without his medications, he was at risk to suffer adverse symptoms. **(#65 at 21)**. Mr. Hicks alleges that Nurse Gallegos' actions in denying his medications were motivated by previous encounters where she had verbally abused him and "attempted to interfere with" his prescribed medications. **(#65 at 21)**. Mr. Hicks claims that as a result of not receiving his medications on December 14, he experienced migraine headaches, arthritic pain, had difficulty eating and drinking, and felt anxious and distressed, causing him to "overreact to the situation by grabbing a broom handle to protect [him]self." **(#65 at 22)**.

Turning to the objective component of Mr. Hicks' claim, "a medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment ... or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)). Additionally, when an Eighth Amendment claim is based on delayed medical care, as Mr. Hicks' claim is here, Mr. Hicks must plead that the alleged deliberate indifference resulted in "substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Accepting Mr. Hicks' factual allegations contained in his Third Amended Complaint as true and construing those allegations in the light most favorable to him, the Court finds Mr. Hicks sufficiently alleged a serious medical need. While the details are somewhat sparse, Mr. Hicks was prescribed multiple, daily medications by a physician or medical professional to manage his various physical conditions. Indeed, the Jail recognized that he was to receive these prescribed medications and dispensed them to him on a daily basis. Also, Mr. Hicks alleged that as a result of the denial of his medications, he suffered migraine headaches, arthritic pain, and experienced mental anxiety and distress. The Court is satisfied that these

allegations suffice to plead substantial harm.  Thus, the Court finds Mr. Hicks sufficiently alleged the objective component of his deliberate indifference claim.

As to the subjective component of Mr. Hicks' claim, the Court must consider whether Mr. Hicks sufficiently alleged that Nurse Gallegos acted with a knowing or conscious disregard of Mr. Hicks' medical need.  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 149596 (10th Cir.1990) (citation omitted).  Mr. Hicks alleges that after Nurse Gallegos withheld his medications on the morning of December 14, he "suffered prolonged unnecessary pain, could not eat, and had an uncontrolled mental state that precipitated the physical injuries from Defendant Gonzales' use of force … ." **(#65 at 22)**.  However, Mr. Hicks only puts forth conclusory allegations that Nurse Gallegos knew if Mr. Hicks did not receive his medications, he would suffer harm.  Allegations such as Nurse Gallegos "knew that without [his] Cymbalta, [he] was at risk to have an explosive mental health reaction to stimuli in a stressful county jail environment" are too vague and speculative to sufficiently state a claim for deliberate indifference.  **(#65 at 21)**.  Also, the Tenth Circuit has held that temporary denials of medications cannot serve as the basis for a deliberate indifference claim.  *See Lane v. Klinger*, 25 Fed. App'x 781, 783–84 (10th Cir. 2001) (finding no Eighth Amendment claim where pain medication was denied for three hours); *see Jackson v. Simmons*, No. CIV. A. 99–3363–KHV, 2001 WL 951008, at *5 (D.Kan. July 26, 2001) (finding no Eighth Amendment claim where pain medication was denied for one day).  Similarly, here, the allegations show that Mr. Hicks was denied his medications for one day.  Thus, the Court finds that the Third Amended Complaint's allegations are insufficient to show that Nurse Gallegos violated a constitutional right.

Accordingly, Nurse Gallegos is entitled to qualified immunity on Mr. Hicks'

Fourteenth Amendment claim, and it is therefore dismissed against her.

### b. **Against Deputy Rolando**

Mr. Hicks also apparently seeks to impose liability on Deputy Rolando for Deputy

Gonzales' alleged use of excessive force (and for the other deputies' failure to intervene) because

he was their supervisor. The simple allegation that Deputy Rolando had supervisory authority

over the deputies is insufficient to state a plausible claim for section 1983 liability. *Duffield v.

Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, Mr. Hicks must plead facts that show an

affirmative, causal link between Deputy Rolando's conduct and the alleged constitutional

deprivations. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Thus, to state a

claim against Deputy Rolando in his supervisory capacity, Mr. Hicks must plead facts that show:

(1) that Deputy Rolando was personally involved in the deprivation of his constitutional rights;

(2) that his personal involvement caused the deprivations; and (3) that he acted with a culpable

state of mind. *See Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). The second

element "requires the plaintiff to show that the defendant's alleged action(s) caused the

constitutional violation by setting in motion a series of events that the defendant knew or

reasonably should have known would cause others to deprive the plaintiff of [his] constitutional

rights." *Id.*

Deputy Rolando argues that the Third Amended Complaint fails to show he was

personally involved in the deprivation of Mr. Hicks' constitutional rights. He further argues that

even if it does, it fails to show that the rights he allegedly violated were clearly established.

Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the showing of

personal participation of a prison or jail supervisor could be satisfied by factual allegations that

the supervisor either personally engaged in the unconstitutional conduct or that he or she completely failed to supervise or train the actor. *Keith v. Koerner*, 843 F.3d 833, 838-39 (10th Cir. 2016); *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

According to the Third Amended Complaint, Deputy Rolando was a "Denver Sheriff's Department Captain with supervisory powers over [Deputies Gonzales, Sisneros, Lombardi, and Kent]" and "had the capacity to directly order them to cease their use of force [] or to alter the force." **(#65 at 19)**. Mr. Hicks contends that Deputy Rolando, along with the other deputies, "formulated a planned course of action … to use force" to move Mr. Hicks to the segregation unit on December 14. **(#65 at 19)**. "Pursuant to Denver Sheriff's Department Policy, [Deputy] Rolando—as the ranking officer—had a duty to be physically present to supervise [Mr. Hicks'] removal" to ensure the force was "not excessive" and "handled appropriately." **(#65 at 19)**. It is also alleged that in contravention of the Denver Sheriff's Department's use of force policy, Deputy Rolando did not ensure that Deputies Lombardi and Kent recorded their "planned course of action," was not "physically present for the scheduled removal," and only appeared after Mr. Hicks was "slammed to the ground and pinned." **(#65 at 19-20)**. Mr. Hicks further alleges that Deputy Rolando was aware of the Denver Sheriff's Department's history of using excessive force, and that "without proper supervision," the use of excessive force was likely to occur again by inexperienced deputies. **(#65 at 19)**. Further, the use of force policy requires Deputy Rolando to "directly order [Deputy] Gonzales to stop" using excessive force, however, Deputy Rolando failed to act and "consciously chose to let the abuse from Gonzales continue." **(#65 at 20)**.

The Court finds these allegations are conclusory and contain no factual support that Deputy Rolando set in motion a series of events that he knew or reasonably should have known

would cause the deputies to violate Mr. Hicks' constitutional right to be free from excessive force. Despite the fact that Deputy Rolando is a "captain" with supervisory powers over the deputies, there are no allegations that show he was personally involved in the force incident. Indeed, the Third Amended Complaint makes clear that Deputy Rolando did not arrive at the scene of the incident until Mr. Hicks was taken to the ground. Simply put, there are no non-conclusory allegations that show Deputy Rolando personally caused the use of excessive force or that he acted with a culpable state of mind. The Court finds that the allegations against Deputy Rolando are insufficient to state a claim for supervisory liability and dismisses this claim against him.

### 2. Official Capacity claims against Deputy Rolando and the Other Denver Sheriff's Department Deputies

Deputy Rolando and the other Denver Sheriff's Department Deputies move to dismiss the 42 U.S.C. § 1983 official capacity claims asserted against them on grounds that Mr. Hicks' injuries were not caused by any governmental policy or custom.

An official capacity claim, in all respects other than name, is a claim against the governmental entity employing the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, Mr. Hicks' 42 U.S.C. § 1983 official capacity claims constitute claims against the City and County of Denver.[5]

Section 1983 prohibits a person acting under color of law from violating another's rights guaranteed under the United States Constitution. The definition of "person" under § 1983

_____

[5]        In their respective Answers, the Denver Sheriff's Department Deputies state that they are employed as deputies for the Denver Sheriff's Department at the Denver County Jail, which is owned and operated by the City and County of Denver. **(#50 at 1-2; #51 at 1-2; #52 at 1; #53 at 1-2; #54 at 1; #55 at 1; #56 at 1-2; #57 at 1; #58 at 1; #59 at 1-2; #60 at 1; and #61 at 1).**

includes local government entities, such as counties, cities, and towns. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, local government entities are liable under §1983 "only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). The doctrines of vicarious liability and *respondeat superior* do not apply, and therefore, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to establish a *prima facie* § 1983 claim against a governmental entity, a plaintiff must produce sufficient evidence to show (1) the existence of a government policy or custom, which (2) directly caused an injury to the plaintiff. *Id.*

As to the first requirement, a government policy is defined as "a course of action consciously chosen from among various alternatives…." *Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985); *J.B. v. Wash. County*, 127 F.3d 919, 924 (10th Cir. 1997). While it certainly includes "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time," it also includes individualized decisions "tailored to a particular situation and not intended to control decisions in later situations." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *J.B.*, 127 F.3d at 924. Whether an individualized decision is a government policy depends on the authority of the decision-maker. If the decision-maker has final policymaking authority for the government entity, all decisions made within the scope of that authority are government policies under § 1983. *Simmons*, 506 F.3d at 1285-86. This is so because "[a]n act by a [local government entity's] final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting

policy or custom … whether that action is to be taken only once or to be taken repeatedly." *Id.* at 1285.

Accordingly, a plaintiff may show a government policy or custom in the form of any of the following ways:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express [government] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla.*, 627 F.3d 784, 788 (10th Cir.2010).

The Denver Sheriff's Department Deputies argue that the official capacity claims against them should be dismissed on two grounds. First, they argue that the Third Amended Complaint fails to allege that the individual deputies have any authority to establish policy on behalf of the City and County of Denver. They also argue that Mr. Hicks failed to identify the existence of any policy or custom that gave rise to Mr. Hicks' alleged constitutional violations.

The Court agrees. Based on a careful review of the Third Amended Complaint, there are no factual allegations that could show the existence of a municipal policy or custom that was the moving force behind the constitutional deprivation related to Mr. Hicks' alleged use of force and failure to intervene claims. While the Third Amended Complaint mentions the Jail's use of force policy, the allegations concern the deputies' failure to follow the policy, not that the policy itself caused the constitutional deprivations. Further, the Third Amended Complaint contains no allegations that any of the deputies are final policymakers who exercised final policymaking authority on any issue relevant to Mr. Hicks' claims. Therefore, the Third Amended Complaint

fails to state an official capacity claim against Deputies Rolando, Gonzales, Sisneros, Lombardi, Kent, Compton, Wherry, Ortiz, Mehnert, Anderson, Rodriguez, Garcia, and Griego. These official capacity claims are dismissed.

### 3. ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 28 U.S.C. § 12132. To state a claim for discrimination under the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Anderson v. Colo. Dept. of Corrections*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012) (internal quotations and citations omitted); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992); *see Ingram v. Clements*, No. 16-1416, 2017 WL 3446830, at *3 (10th Cir. August 11, 2017). Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege: (1) his is disabled under the Act; (2) "that he would be otherwise qualified to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff." *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (internal quotations and citations omitted).

#### a. Official Capacity Claims Against Dr. Stob and Mr. Applegate

Since Mr. Hicks voluntarily dismissed the individual capacity claims asserted against both Dr. Stob and Mr. Applegate **(#76 at 2)**, the Court now turns to their motions to dismiss the official capacity claims asserted against them. Dr. Stob and Mr. Applegate argue that the official

capacity claims (1) are duplicative of the claims Mr. Hicks already pled against the City and County of Denver and (2) that the Third Amended Complaint's allegations are insufficient to state claims against them in their official capacities. The Court agrees.

Given that an official capacity claim is a claim against the governmental entity employing the official, Mr. Hicks' ADA and Rehabilitation Act claims constitute official capacity claims against the City and County of Denver. *See Graham*, 473 U.S. at 166. The Third Amended Complaint already contains a claim asserted against the City and County of Denver and the Denver Health and Hospital Authority alleging discrimination under the Rehabilitation Act. (**#65 at 27**). This claim includes allegations that the City discriminated against Mr. Hicks by "refusing to official[ly] recognize and accommodate [his] hearing disability" when he was confined at the Jail. (**#65 at 27**). Moreover, the Third Amended Complaint contains no factual allegations that Dr. Stob or Mr. Applegate are final policymakers who exercised final policymaking authority for the City. Thus, for the above reasons, the Court finds the official capacity claims asserted against Dr. Stob and Mr. Applegate are dismissed.

### C. Mr. Hicks' Request for Counsel

Mr. Hicks moves, *pro se*, for appointment of *pro bono* counsel to assist him in prosecuting the remaining claims against the individual deputies and the City and County of Denver. He states that he is unable to afford an attorney as he is currently incarcerated and "being treated as a segregation inmate" who is "being denied physical access to the law library." (**#93 at 1**). Mr. Hicks states that the issues in this case are "complex," he "has limited knowledge of the law," and he is only allowed to "communicate[] with [the] law library clerk by kite [] who provides no paralegal services." (**#93 at 7**).

The Court finds it appropriate to grant Mr. Hicks' motion pursuant to D.C.COLO.LAttyR

15(e)-(f). This is not to say that Mr. Hicks has a right to the appointment of counsel or that any *pro bono* counsel will agree to represent him. The decision to accept a *pro bono* appointment rests with the attorney. If no attorney wishes to assist Mr. Hicks without charge, the Court will not compel them to do so and Mr. Hicks will continue to represent himself *pro se* in this matter. Moreover, although the Court will act expeditiously in canvassing its panel of potential *pro bono* attorneys, it does not intend to delay further proceedings in this matter in the interim. In other words, Mr. Hicks remains obligated to diligently continue the pursuit of his claims in this case *pro se*, unless and until an attorney agrees to enter an appearance on his behalf.

### D. Mr. Hicks' Request to Submit Exhibits

Finally and without any further explanation, Mr. Hicks moves to submit approximately 317 pages of documents with the Court that are supposedly related to this case. **(#79 and #94)**. These exhibits were entered on the docket at **(#79)**, thus, the request is denied as moot. However, the Court did not examine any of exhibits in connection with the pending motions. Further, Mr. Hicks is on notice that going forward, he must file a motion for leave to submit any further documentation with the Court unless it is properly submitted in support of an evidentiary motion.

## IV. CONCLUSION

For the foregoing reasons,

1. The individual capacity claims by Plaintiff Edward Lee Hicks against Defendants Christian Stob and Timothy Applegate are deemed voluntarily dismissed;

2. Defendant Wendy Gallegos' Motion to Dismiss **(#42)** is **GRANTED**, and all claims against her are **DISMISSED**;

3. Defendant Christian Stob's Motion to Dismiss **(#41)** is **GRANTED**, and the official

capacity claim against him is **DISMISSED**;

4. Defendant Timothy Applegate's Motion to Dismiss **(#47)** is **GRANTED**, and the official capacity claim against him is **DISMISSED**;

5. Defendant Frank Rolando's Partial Motion to Dismiss **(#88)** is **GRANTED** insofar as the supervisory liability claim asserted against him is **DISMISSED**, and all official capacity claims asserted against him are **DISMISSED**;

6. Defendants Jerome Gonzales, Jason Sisneros, Victor Lombardi, Kenneth Kent, Alberta Compton, Alexandra Wherry, Robert Ortiz, Darryl Mehnert, Richard Anderson, Carrie Rodriguez, Sheila Garcia, and Gabriel Griego's combined Partial Motion to Dismiss **(#49)** is **GRANTED** insofar as all official capacity claims asserted against them are **DISMISSED**;

7. In light of the above rulings, the claims that will proceed in this action are: Claim 1 - Mr. Hicks' claim of excessive force against Deputy Gonzales in his individual capacity; Claim 2 - Mr. Hicks' claim of failure to intervene against Deputies Lombardi, Sisneros, Kent, Compton, Wherry, Ortiz, Mehnert, Anderson, Rodriguez, Garcia, and Griego in their individual capacities; Claim 3 - Mr. Hicks' claim of excessive force against Deputy Rolando in his individual capacity; and Claim 7 – Mr. Hicks' *Monell*-type claim against the City and County of Denver and the Denver Health and Hospital Authority for a violation of the Rehabilitation Act;

8. Plaintiff Edward Lee Hicks' Motion for Appointment of Counsel **(#93)** is **GRANTED**, and the Clerk of the Court shall canvass the *pro bono* panel for an attorney willing to represent Mr. Hicks in this action without cost; and

9. Plaintiff Edward Lee Hicks' Motion to Enter Exhibits (#79 and #94) is **DENIED AS MOOT**.

Dated this 11th day of September, 2019.

BY THE COURT:

_Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge